UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-619 (BAH) |
| | : | |
| ERIK HERRERA, | : | |
| | : | |
| Defendant | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits this opposition to the Defendant's Motions in Limine.

**I.    Introduction**

The Defendant, Erik Herrera, is charged in a five count Indictment that was returned on October 6, 2021. The Defendant is charged with violating Title 18, United States Code, Sections 1512(c)(2) and 2 (Obstruction of an Official Proceeding and Aiding and Abetting) (Count 1); Title 18, United States Code, Section 1752(a)(1)) (Entering and Remaining in a Restricted Building or Grounds) (Count 2); Title 18, United States Code, Section 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds) (Count Three); Title 40, United States Code, Section 5104(e)(2)(D) (Disorderly and Disruptive Conduct in the Capitol Building) (Count Four); and Title 40, United States Code, Section 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building) (Count Five).

These charges stem from Erik Herrera's unlawful conduct at the U.S. Capitol on January 6, 2021. Due to the pandemic, the U.S. Capitol building was closed to the public. Had the

building been open, all visitors would have been required to enter through the Visitor Center, where they would have been screened by the U.S. Capitol Police and escorted through the building on by a tour guide.  On that date, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election.  While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building.  As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

Herrera was part of the larger mob that descended on the Capitol that day.  A little before 3:00 PM, he entered the Capitol through a fire door located on the Senate wing side of the building.  He came prepared – wearing a gas mask, googles, and tactical vest – some of which he'd ordered just a few weeks before January 6.  Herrera entered the building and immediately went into the Parliamentarian's Office.   Had the U.S. Capitol building been open to the public, the Parliamentarian's Office would not have been  part of the public tour.  Once inside, he picked up a stack of papers and held them out; this is depicted in a post on his Instagram account, with the caption: "I'm reclaiming Aztlan because I love America.  Querer es poder!"  Later on, in an exchange with someone else on Instagram, he said he had picked up the papers because he "wanted a goofy 'fuck you' picture."  From the Parliamentarian's Office, Herrera and others left the building out the same door they had come in – shortly after law enforcement officers came through telling rioters to leave.  On his way out, Herrera raised what appears to be a bottle of liquor into the air in a fist-pumping motion.

Instead of leaving the building and the grounds, Herrera then went to a different door, also on the northwest side of the building. He entered the building again. As he entered, he walked past shattered windows on each side of the door and spent at least five minutes setting up his camera and taking photographs. Herrera then proceeded to the area of the building known as the Crypt, and remained inside for approximately fifteen more minutes, before he finally exited the building around 3:30 PM. Herrera appeared to be taking photos or video the entire time.

Airline records show that Herrera returned home to California on January 7, 2021. Both before and after January 6, 2021, Herrera communicated about his reasons for traveling to DC that day over Instagram. For example, in the early morning hours of January 7 – less than a day after the riot – someone sent him a message:

> I have been at the hospital all day and when people stopped in the reception area to watch what was happening on the news. . . I too found myself captivated by what was being demonstrated. I remember you telling me you were heading to DC to cover some shit but I don't want to assume anything further. So, to clear any confusion . . . are you there to provide journalism coverage or is there a different reason that I'm not fully aware of?

Herrera's response was brief: "I did what I had to do for both photojournalism and our people."

The other person asked:

> Could you elaborate on what you mean by you did what you had to do for our people? Obviously news coverage can be biased depending on its source, but you are there, you're in it. Whatever was planned and executed for today, I'd like to understand what the mission was and the desired outcome?

Herrera responded: "The first part I'll answer at another time. It was driven by the election results but also everything else that has been affecting the country for almost a year."

Herrera later followed up: "I don't think we had an honest electoral process in 2020. People are fed up."

3

A copy of the Defendant's Instagram post, showing him inside the Senate Parliamentarian's office is included below:



The Defendant, by and through his attorney, moved for an order excluding the following evidence at trial: (1) the social media post from Instagram depicting a person, alleged to be Mr. Herrera, in the Senate Parliamentarian's Office on January 6, 2021, (2) any general evidence, including testimony, videos, photos, or other exhibits of the events of January 6, 2021, at the United States Capitol, the ellipse, and area surrounding both locations, (3) any evidence the government seeks to admit pursuant to Federal Rule of Evidence 404(b), and (4) any evidence the government offers pursuant to 902(11). *See* ECF No. 37.

The Defendant's motions are without merit or are premature.

**II. Discussion and Argument**

### A. The Defendant's social media post from Instagram showing the Defendant in the Senate Parliamentarian's Office is Intrinsic to the Offense, Highly Relevant, and Probative

The Defendant argues that the Instagram post above is not relevant to the charged offenses and that its admission would also violate Fed. R. Evid. 403. This argument is meritless.

The Instagram photograph of the Defendant along with its caption is intrinsic to the offense, and it is necessary to both establish essential elements of the Defendant's crimes, and to complete the story of the crime on trial. It is relevant and probative. Evidence is "admissible provided that it is 'relevant' and not otherwise prescribed by law or rule." *United States v. Fonseca*, 435 F.3d 369, 75 (D.C. Cir. 2006) (citing Fed. R. Evid. 402); *United States v. Mathews*, 62 F. Supp. 2d 59, 61 (D.D.C. 1999) ("In general all relevant evidence is admissible"). A piece of "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Accordingly, "[s]o long as the evidence makes a fact of consequence more or less likely, it is relevant." *United States v. Latney*, 108 F.3d 1446, 1449 (D.C. Cir. 1997).

Determining relevancy for a criminal trial focuses on whether the evidence addresses elements of either the charged offense or any relevant raised defenses. *United States v. Walker*, 32 F.4th 377, 388 (4th Cir. 2022) ("The governing hypothesis of any criminal prosecution, for the purpose of determining relevancy of evidence introduced, consists of elements of the offense charged and any relevant defenses raised to defeat criminal liability") (quoting *United States v. Lamberty*, 778 F.2d 59, 60–61 (1st Cir. 1985)). However, "evidence need not be *dispositive* of an element of the crime to be relevant, it must merely cross the low threshold prescribed by Rule

401 [of making a consequential fact more or less probable]." *United States v. Slatten*, 310 F. Supp. 3d 141, 145 (D.D.C. 2018) (emphasis added). Thus, whether "evidence is not conclusive, or even nearly so, [it] is of no moment. '[M]ost convictions result from the cumulation of bits of proof which, taken singly, would not be enough in the mind of a fair minded person.'" *Latney*, 108 F.3d at 1449 (quoting *United States v. Pugliese,* 153 F.2d 497, 500 (2d Cir.1945) (Hand, J.)). Accordingly, to establish relevance, and hence admissibility, for the above-described evidence, it is necessary to establish that the evidence makes a fact of consequence more or less probable for at least one element of the charged offense(s).

Under Section 1512(c)(2), criminal liability arises for "whoever corruptly…obstructs, influences or impedes any official proceeding, or attempts to do so." 18 U.S.C. § 1512(c)(2). The Defendant is also charged at 18 U.S.C. § 1752(a)(2), where the United States must prove that the Defendant had the requisite intent to "disruptive the orderly conduct of Government business or official functions." Similarly, at 40 U.S.C. §§ 5104(e)(2)(D) the United States must prove that the defendant engaged in "disruptive conduct…with the intent to impede, disrupt or disturb the orderly conduct of a session of Congress."

The above-described evidence is probative of the Defendant's intent, his motive, and his state of mind during the instant offenses. It is direct evidence that the Defendant acted "corruptly" as it pertains to the 1512(c)(2) count, and it also shows that the Defendant had knowledge that he was not lawfully permitted inside the Capitol and by extension the Senate Parliamentarian's Office. By his own admission, the Defendant states in the Instagram post that he is "reclaiming Aztlan because I love America. Querer es poder!" This speaks directly to the Defendant's purpose and intent for being at the riot on January 6, 2021. It shows that his intentions were wrongful, in that he would not have to "reclaim" something that had not been

6

taken. "Querer es Poder" roughly translates to "where there is a will there is a way," which suggests that the Defendant had to act with a certain amount of resolve, and in the face of resistance, to make his way to the Capitol, and into this particular office. The photograph itself demonstrates that the Defendant was actually inside the Capitol building on January 6, 2021, which is directly relevant to the 1752(a)(2) charge and the 5104(e)(2)(G) charge. Additionally, by grabbing a stack of papers inside the Senate Parliamentarian's Office, it shows the Defendant engaged in "disruptive conduct…with the intent to impede, disrupt or disturb the orderly conduct of a session of Congress." 40 U.S.C. §§ 5104(e)(2)(D). Moreover, as noted above, the United States intends to introduce additional evidence that shows the Defendant referenced this exact photograph in a different discussion on social media, wherein he describes that he intended to send a "fuck you" message with this conduct, which further shows his intent to "disrupt the orderly conduct of Government business or official functions." *See* 18 U.S.C. § 1752(a)(2).

Even if the Defendant can somehow claim that he was "allowed" into the Capitol – and he cannot – he certainly did not have permission to enter this specific office and pick up a stack of papers and snap a photo of himself and post it on social media with the incriminating caption. The evidence is intrinsic to the charged offenses as it shows the Defendant inside a sensitive area of the Capitol, and it is directly relevant to prove his intent, motive, and state of mind. Evidence may be considered "intrinsic," that is, not subject to Rule 404(b) if it is "of an act that is part of the charged offense; and (2) it is evidence of "acts performed contemporaneously with the charged crime…[that] facilitate the commission of the charged crime." *United States v. Bowie* 232F.3d 923 at 928-29 (D.C.Cir.2000).

Clearly, this photograph/caption is one of the most directly relevant pieces of evidence in this case. The Defendant alternatively makes an FRE 403 argument that a jury would

7

impermissibly infer what papers are being held and ask other questions about the circumstances of the photo – suggesting that the evidence would be unduly prejudicial.  On the contrary, the United States seeks to introduce this evidence for the reasons set forth above as it directly demonstrates an act that is part of the charged offense performed contemporaneously with the charged crime,  not to confuse the jury or facilitate improper inferences about the circumstances of the photo.  It is unclear what exactly, the Defendant claims is improper about the photo or what inferences the Defendant proposes are improper or even likely.  The Defendant makes a conclusory statement that the photo itself would be unduly prejudicial, as it could open up an unending stream of inferences about who took the photo, what the papers are, and what the general circumstances of the photo were.  These are not improper inferences, but more more importantly, a jury will understand the relevance of this crime as it makes a fact of consequence in this case (most notably, the defendant's presence in the Capitol and his intent) more or less probable.   The photo and its caption—both provided by the defendant himself—speak for itself.[1] For all of these reasons, the evidence should be admitted, and the Defendant's Motion in Limine should be denied on this issue.

> **B. Defendant's Motion in Limine to preclude any general evidence of the events of January 6, 2021 is vague and overbroad**

The Defendant's Motion in Limine also seeks to exclude any general evidence, including testimony, videos, photos or other exhibits of the events of January 6, the Capitol, the Ellipse, and the areas surrounding both locations.  The United States provided to the defense an outline of areas of interest discussing the type of witnesses the United States may call at trial, as well as

---

[1] The Defendant makes an ancillary argument that such evidence would violate the hearsay rules under Fed. R. Evid. 801 and 802.  However, pursuant to Fed. R. Evid.  803, such evidence would be excluded by the hearsay rule.  *See* Fed. R. Evid. 803(1), (2), and (3).

the types of exhibits it may introduce – in general terms.  The United States is currently working to produce a more detailed witness and exhibit list, however, the United States has produced the discovery in this case, including global discovery productions, and the Defendant has access to specific pieces of evidence it can specifically object to.   The Defendant's motion does not refer to any specific evidence along these lines, or provide any concrete examples, thus a motion to exclude *all general evidence* of this kind is vague and overbroad.  Should the Defendant identify specific pieces of evidence when reviewing the Government's exhibit list, the Defendant can raise those objections later, and the Court may deal with these issues as they arise, or at trial.

In light of the lack of specific evidence identified and the overly broad nature of the request, the current motion in limine should be denied.  *Fakhoury v. O'Reilly*, No. 16-13323, 2022 WL 909347, at *6 (E.D. Mich. Mar. 28, 2022) ("A court is well within its discretion to deny a motion *in limine* that fails to identify the evidence with particularity or to present arguments with specificity") (emphasis added) (quoting *United States v. Cline*, 188 F. Supp. 2d 1287, 1292 (D. Kan. 2002)) (citing *Nation Union v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996)); *Ctr. Hill Cts. Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 19-CV-80111, 2020 WL 496065, at *2 (S.D. Fla. Jan. 30, 2020) ("The Court concludes that this motion *in limine* is overbroad in that it 'lacks the necessary specificity with respect to the evidence to be excluded'"); *In re Homestore.com, Inc.*, No. CV 01-11115 RSWL CWX, 2011 WL 291176, at *2 (C.D. Cal. Jan. 25, 2011) ("The Court finds Plaintiff's request as over-broad and vague, and therefore inappropriate for review at the motion *in limine* stage); *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525PSGPJWX, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) ("motions *in limine* should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during

9

trial") (citing *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir.1975) ("A better practice is to deal with questions of admissibility of evidence as they arise")).

### C. Even if such evidence is not considered vague and overbroad, evidence that shows the broader context of the events of January 6, 2021, are directly relevant to the charged offenses, and such evidence is intrinsic evidence

It is unclear what specific evidence the Defendant seeks to exclude with the Motion in Limine. However, the United States does intend to introduce evidence at trial that shows the "official proceeding" of a Joint Session of Congress on January 6th, and it does intend to introduce evidence showing that the larger areas of the U.S. Capitol, and the Capitol grounds were "restricted areas" as they pertain to the criminal statutes at issue. Additionally, the Government intends to introduce evidence showing the Defendant's points of entry/exit inside and around the Capitol and the violence that took place (including those that were witnessed by the Defendant) in and around those areas.

Videos and photographs temporally and geographically proximate to Erik Herrera's breach of the Capitol are intrinsic to the offense and are admissible. "A threshold question in determining the admissibility of evidence of other crimes and bad acts is whether the evidence, in actuality, relates to acts unconnected with those for which the defendant is charged, or instead is intertwined with the commission of charged crimes." *United States v. Machado-Erazo*, 901 F.3d 326, 333–34 (D.C. Cir. 2018). Acts "extrinsic" to the crime charged are subject to Rule 404(b)'s limitations; acts "intrinsic" to the crime are not. *Id.* (citing *Bowie,* 232 F.3d at 927; *see also United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010)). Evidence that is "intrinsic" to the charged crimes is not subject to Rule 404(b) because, by its very nature, it does not involve *other* crimes and bad acts, and thus there is no concern that it might be used as improper character evidence. *United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 148 (D.D.C.

2020). As noted above, the D.C. Circuit has identified two circumstances encompassing intrinsic evidence: the evidence "is either 'of an act that is part of the charged offense' or is of 'acts performed contemporaneously with the charged crime ... if they facilitate the commission of the charged crime.'" *Id.* at 159 (citing *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011)).

Videos and exhibits depicting the areas surrounding Erik Herrera, including acts of violence, as he made his way inside the U.S. Capitol are intrinsic evidence. By approximately 2:45 PM on the west side of the Capitol, thousands of rioters, the Defendant among them, had penetrated through barricades and forced their way up to the Capitol. Just inside the west side Senate doors, law enforcement made a last stand against the force and violence of the rioters. Closed circuit video captured the final moments before the rioters pushed through the Senate Wing Doors at approximately 2:48 PM, as pictured below:



The Senate Wing Doors is one location where Herrera entered the building less than twenty minutes after the mob forced their way into the building past law enforcement. Exhibits,

photos, videos, taken in both the geographical and general temporal presence of the Defendant are relevant to the Defendant's intent and state of mind and are thus intrinsic to the offense.

Consistent with *United States v. Oseguera Gonzalez*, videos/photos and other evidence depicting the areas around Erik Herrera as he breached the Capitol building and what the police did to protect those areas are admissible intrinsic evidence because that evidence speaks to whether the Defendant entered a restricted building or grounds without lawful authority. Videos from in and around the Senate doors (and the Senate Fire Door) leading up to the Defendant's unlawful entry depict the moment for what it was: a riot. Videos taken from the Defendant's own Instagram account showing violent interactions with police would indicate to any reasonable person he had no right to lawfully enter the building.  The defense is free to cross-examine any witness about whether Mr. Herrera himself committed acts of violence or to request a limiting instruction. However, prohibiting the introduction of intrinsic evidence depicting the violence and the activity of the mob that Mr. Herrera was a part of (and that he witnessed personally) from parts in/around the building where Mr. Herrera entered would unduly impair the jury from its fact-finding mission: determining what Mr. Herrera experienced and committed on January 6.

Moreover, the Defendant is also charged with Aiding and Abetting, pursuant to 18 U.S.C. § 2, the Obstruction of an Official Proceeding offense discussed above.[2]  The D.C. Circuit Court has explained that, To establish aiding and abetting, the government ha[s] to prove, beyond a

---

[2] The United States is not limited to an aiding-and-abetting theory on Count 1 alone.  "Importantly, aiding and abetting is not an independent offense, and the government is not required to explicitly charge aiding and abetting so long as the underlying offense is charged." *United States v. Fitzgerald*, 514 F. Supp. 3d 721, 770 (D. Md. 2021) (citing *United States v. Alexander*, 447 F.3d 1290, 1298 (10th Cir. 2006); *United States v. Dodd*, 43 F.3d 759, 762–63 (1st Cir. 1995); *United States v. Perry*, 643 F.2d 38, 45 (2d Cir. 1981) ("18 U.S.C. § 2 can be read into an indictment which specifically charges only a substantive offense"); *Pigford v. United States*, 518 F.2d 831, 834 (4th Cir. 1975)).

reasonable doubt, that [the defendant] intentionally 'facilitated any part ... of [the] criminal venture,' with enough 'knowledge [of the crime to] enable[ ] him to make the relevant legal (and indeed, moral) choice' to opt out instead. *United States v. Slatten*, 865 F.3d 767, 793–94 (D.C. Cir. 2017) (quoting *Rosemond v. United States*, 572 U.S. 65, 72, 78 (2014)).

Exhibits and accompanying witness testimony such as these reveal how the rioting mob overwhelmed police resources, with new groups of people coming in refreshing the mob in various areas, with multiple breaches taking place, making it difficult for law enforcement to secure multiple areas. The Defendant himself came into the building after an initial wave, refreshing the mob and adding to its numbers. He left the Capitol after entering the Senate Parliamentarian's Office, took a picture of himself with a stack of papers, along with a number of other photographs and videos, hoisted a bottle of alcohol in triumph, and roamed the Crypt before leaving – about 30 minutes later. The Defendant's presence and conduct helped to fuel the chaos and crowds, which officers fought so hard to get under control that day. Moreover, not only did Herrera fail to voluntarily opt out, but he actually returned and re-entered the Senate Wing Doors after he left the Senate Fire Door. From that, a jury could reasonably infer that the Defendant had the requisite knowledge of the nature of the crimes and the circumstances of the crimes' commission.

Additionally, the United States intends to introduce a video montage that depicts the Congressional Record that shows what was happening with Congress during this relevant time period. This video montage will show the jury that the Joint Session of Congress was conducting an "official proceeding" and that the riot did in fact help facilitate the ultimate goal of obstructing/impeding the certification of the election results. The evidence will show that

Congress was prevented from having its official proceeding for the hours while the rioters took over the Capitol.

Further, the conduct of others is relevant for the other crimes the Defendant is charged with. For instance, for Count Two, Section 1752(a)(1) states that "Whoever …knowingly enters or remains in any restricted building or grounds without lawful authority to do so; …or attempts or conspires to do so, shall be" criminally punished. 18 U.S.C. § 1752(a)(1). Accordingly, to find a defendant guilty of Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1), the Government must prove "the following beyond a reasonable doubt: (1) the defendant entered or remained in a restricted building without lawful authority to do so; and (2) the defendant did so knowingly." *United States v. Rivera*, No. CR 21-060 (CKK), 2022 WL 2187851, at *5 (D.D.C. June 17, 2022). The term "restricted building or grounds" includes "any posted, cordoned off, or otherwise restricted area…of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(b).[3] Accordingly, the location and movement (conduct) of the Vice President are relevant to establishing the Capitol and its grounds as a restricted building or grounds under Section 1752(c)(1)(b). Count Three has similar considerations, as Section 1752(a)(2) states that "Whoever… *knowingly*, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any *restricted building or grounds* when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; …or attempts or conspires to do so, shall be" criminally punished. 18 U.S.C. § 1752(a)(2) (emphasis added).

---

[3] The Secret Service protects the Vice President. 18 U.S. Code § 3056(a)(1) ("Under the direction of the Secretary of Homeland Security, the United States Secret Service is authorized to protect the following persons: (1) The President, the Vice President (or other officer next in the order of succession to the Office of President), the President-elect, and the Vice President-elect")).

Accordingly, conduct by the Vice President, law enforcement, and other rioters again proves relevant to the charge (of whether to find a defendant guilty of Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2)). Furthermore, the activities of Congress are relevant to the additional element requiring that the conduct "impedes or disrupts the orderly conduct of Government business or official functions." How those in the Government respond to an attempted disruption is a sign that there was a successful disruption.

Count Four, Section 5104(e)(2)(D) states: An individual or group of individuals may not willfully and knowingly…utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; 40 U.S.C. § 5104(e)(2)(D). Again, the activities of Congress members would be relevant, particularly here, since an element of the offense is that the defendant's actions did "impede, disrupt, or disturb the orderly conduct of a session of Congress." There is also an additional mental state requirement – in addition to knowingly committing the offense, the defendant also has to willfully commit the offense. Broadly, a person acts "willfully" when they " 'act[ ] with knowledge that [their] conduct was unlawful.' " *Rivera*, 2022 WL 2187851, at *6 (quoting *Bryan v. United States*, 524 U.S. 184, 191-92 (1998)); *Id*. at *7 ("to act 'willfully and knowingly' is to 'be aware of and knowingly violate[ ] [a] legal obligation not to commit the charged actus reus'") (quoting *United States v. Burden*, 934 F.3d 675, 680 (D.C. Cir. 2019)); *see also United States v. Moore*, 612 F.3d 698, 703 (D.C. Cir. 2010) (Kavanaugh, J., concurring). Again, the actions and reactions of law

enforcement and other rioters could and should have given the Defendant a clue as to the unlawful nature of his actions.

Conduct of the mob would also be relevant for the similar statute in Count Five. Section 5104(e)(2)(G) states that "An individual or group of individuals may not *willfully and knowingly*… parade, demonstrate, or picket in any of the Capitol Buildings." 40 U.S.C. § 5104(e)(2)(G) (emphasis added). Additionally, Section 5104(e)(2)(G) has the added element of parading, demonstrating, or picketing – all public activities – giving the conduct of, and the Defendant's interactions with, others even more relevancy.

Moreover, knowledge and criminal intent are elements of the aiding-and-abetting offense and hence facts of "consequence" at trial. *Latney*, 108 F.3d at 1448. Accordingly, evidence that makes the defendant's knowledge or criminal intent more or less likely is relevant pursuant to Fed. R. Evid. 401.

To the extent that the Defendant would argue that he did not have the full knowledge and details of the obstruction plan and so cannot be held responsible for the actions of other rioters, "once a common design is established, the aider and abettor is responsible not only for the success of the common design, but also for the probable and natural consequences that flow from its execution, even if those [specific] consequences were not originally intended". *United States v. Walker*, 99 F.3d 439, 443 (D.C. Cir. 1996). This "probable and natural consequences" doctrine of aiding and abetting… would be defeated by any definition of aiding and abetting that required the accomplice to have perfect knowledge of the details of the crimes the principal intended to commit. *United States v. Davis*, 828 F. Supp. 2d 405, 409 (D. Mass. 2011), aff'd, 717 F.3d 28 (1st Cir. 2013) (citing *United States v. Walker*, 99 F.3d 439, 443 (D.C. Cir. 1996)).

The D.C. Circuit Court has made it clear that aiders and abettors do not have to have full knowledge beforehand of what every other co-conspirator is doing to be criminally liable for their scheme. For instance, in *Slatten*, the defendant ("Liberty"), was a driver in a four-vehicle convoy that ended up in a shootout that killed multiple people, and Liberty was convicted of multiple charges, including eight counts of voluntary manslaughter and 12 counts of attempted manslaughter. *Slatten*, 865 F.3d at 792–93. It was unclear whose bullets in the massive shootout killed which victims, and Liberty asserted that there was no evidence that he knew what anyone (other than one other shooter) was doing, and therefore Liberty's shooting "could not have knowingly aided in the commission of any crime with the requisite intent." *Id*. at 793–94. However, the D.C. Circuit held that there was sufficient evidence to support Liberty's convictions as either directly responsible for the deaths or under an aiding-and-abetting theory. *Id*. at 793. The Court found that "Liberty's failure to opt out [of the gun fight] satisfies the mens rea element, which can arise during the crime's commission." *Id*. at 794 (citing *Rosemond v. United States*, 572 U.S. 65, 79–80 (2014). Furthermore, "Given the evidence before the jury, [the Court found] no difficulty in holding that actively participating in a gunbattle in which a gunman kills [multiple victims] can aid and abet that killing' even if the government cannot prove which gunman killed which victim… This is especially true where, as here, the gunfire of each shooter hindered potential escape, leaving victims exposed to the others' bullets." *Id.* (emphasis added).

Erik Herrera did not have or use a gun in this particular instance; however, similar to Liberty, his conduct left victims (scores of law enforcement officers) and potential victims (Members of Congress and staff members) exposed to violence through his role in this criminal event.  Aiding and abetting law is meant to address and punish that type of criminal collective action.

17

### D. The remainder of the Defendant's Motions in Limine are premature

The Defendant's additional motions argue that the United States cannot comply with Fed. R. Evid. 901 or Fed. R. Evid. 602, as the Government has not yet established authenticity or witnesses with personal knowledge. This motion is premature as the United States has not yet provided its witness list, much less introduced a witness at trial with personal knowledge who can otherwise testify as to the authenticity of the Instagram post referenced above or any of the other general evidence listed above. The United States will produce evidence sufficient to support a finding that "the item is what the proponent claims it is" pursuant to Fed. R. Evid. 901 at trial. Moreover, the United States will present witnesses with personal knowledge at trial. The defense will be free to challenge such evidence if stipulations have not been met. Along the same lines, if stipulations cannot be met, the Government intends to make certifications available for inspection pursuant to Fed. R. Evid. 902(11) before trial.

Finally, at this time, the Government has not identified evidence that would fall under Rule 404(b). Should such evidence be identified, the United States agrees that the Defendant should have the opportunity to challenge the admission of such evidence. The United States reserves the opportunity to introduce such evidence if it is discovered later during its preparation for trial, and if such evidence is discovered, it will provide sufficient notice to the defense prior to trial, in accordance with Rule 404(b).

### E. Alternatively, the above issues should be reserved for trial

Alternatively, if the Court believes there may be merit in the Defendant's Motions in Limine, rather than granting the motion, it may be "best to defer rulings until trial, [when]

decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole." *Youssef v. Lynch*, 144 F. Supp. 3d 70, 80 (D.D.C. 2015) ("The trial judge's discretion extends not only to the substantive evidentiary ruling, but also to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial.") (citing cases from the Second, Eighth, and Ninth Circuits).

### III.   Conclusion

The United States respectfully requests that this Court deny, or, in the alternative, reserve ruling on, the Defendant's Motions in Limine.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


*/s/ Christopher M. Cook*
CHRISTOPHER M. COOK
Assistant U.S. Attorney-Detailee
Kansas Bar No. 23860
United States Attorney's Office
for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
christopher.cook5@usdoj.gov