UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>ERIK HERRERA,<br><br>        Defendant. | Case No. 1:21-CR-00619-BAH |

**MOTION FOR RELEASE PENDING APPEAL**

**AND POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Defendant Erik Herrera by and through his attorney of record, Federal Public Defender Jonathan K. Ogata, respectfully moves this Honorable Court, pursuant to 18 U.S.C.§ 3143(b) and Fed. R. Crim P. 46(c) to order that he be released from his current sentence while his case is on appeal. Mr. Herrera brings this motion because the Supreme Court of the United States has granted certiorari in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), which involves the same issue as Mr. Herrera's appeal currently pending in the United States Court of Appeals for the District of Columbia Circuit. The D.C. Circuit is currently holding Mr. Herrera's appeal in abeyance pending the Supreme Court's resolution of the *Fischer* case. The Supreme Court's decision in *Fischer* will have a direct effect on Mr. Herrera case. Should the Supreme Court reverse the D.C. Circuit or modify the D.C. Circuit's reasoning, it is possible the D.C. Circuit will have to vacate the only felony count Mr. Herrera was convicted of. This would result in a reduction of his sentence that is likely equal to, or less than, the time Mr. Herrera has already served. For these reasons, Mr. Herrera requests that he be released from custody while his appeal is pending.

1

## **BACKGROUND: RELEASE PRIOR TO SELF-SURRENDER TO BOP**

Mr. Herrera was arrested on August 19, 2021, in the Central District of California and subsequently released on personal recognizance bond. *See* Presentence Investigation Report (PSR) (ECF 73) at 2; ECF No. 6. Mr. Herrera remained on pretrial release during the entirety of this case, including up to and throughout trial, after his conviction pending sentencing, and after his sentencing pending designation of a BOP facility. ECF No. 73; Docket Entry 8/19/2022, Case No. 21-cr-00619-BAH; Docket Entry 1/13/2023, Case No. 21-cr-00619-BAH.

In the 12-month period in which Mr. Herrera was on release pending trial, he was in full compliance with his release conditions. *See* PSR at 5. Mr. Herrera appeared as required to all of his pretrial hearings. *See* Docket Entries 09/09/2021, 10/15/2021, 5/13/2022, 08/05/2022, Case No. 21-cr-00619-BAH. Mr. Herra reported as required for his trial. *See* Docket Entries, 08/15/2022, 08/16/2022, 08/17/2022, 08/18,2022, 08/19/2022, Case No. 21-cr-00619-BAH. At trial, Mr. Herrera was found guilty on all five of the counts of the indictment. *See* Docket Entry, 08/19/2022, Case No. 21-cr-00619-BAH. After Mr. Herrera was convicted at trial, the Court allowed him to remain on release pending sentencing. *See id.* Mr. Herrera appeared for sentencing on January 13, 2023, as required. *See* Docket Entry, 01/13/2023, Case No. 21-cr-00619-BAH. In the 5-month period between trial and sentencing, Mr. Herrera remained in full compliance with his release conditions. *See* PSR at 5.

This Court sentenced Mr. Herrera to 48 months incarceration. *See* Docket Entry, 01/13/2023, Case No. 21-cr-00619-BAH; ECF No. 89. Following the imposition of this sentence, the Court allowed Mr. Herrera to remain released and ordered him to self-surrender to the Bureau of Prisons (BOP) once it had completed the designation process. *See id.* On February 21, 2023, Mr. Herrera moved to continue his self-surrender date, and on February 22, 2023, this Court granted the unopposed motion. ECF Nos. 87, 88. Mr. Herrera remained in compliance with his release conditions and on March 10, 2023, Mr. Herrera self-surrendered as required to the Federal

Correctional Institution (FCI)—Terminal Island, San Pedro, California. This is where Mr. Herrera remains today.[1]

## RELEVANT LEGAL ISSUE ON APPEAL

In connection with the events of January 6, 2021, at the United States Capitol, Mr. Herrera was charged by indictment with one felony and four misdemeanors. Indictment (ECF No. 8). Specifically Mr. Herrera was charged with: (1) Obstruction of an Official Proceeding and Aiding and Abetting in violation of 18 U.S.C. §§ 1512(c)(2), 2, a felony; (2) Entering and Remaining in a Restricted Building or Grounds is violation of 18 U.S.C. § 1752(a)(1)), a misdemeanor; (3) Disorderly or Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2), a misdemeanor; (4) Disorderly Conduct in a Capitol Building a violation of 40 U.S.C. § 5104(e)(2)(D)), a misdemeanor; and (5) Parading, Demonstrating, or Picketing in a Capitol Building a violation of 40 U.S.C. § 5104(e)(2)(G), a misdemeanor. *Id.*

In Count One of the indictment charging MR. Herrera with Obstruction of an Official Proceeding, the government alleged:

> On or about January 6, 2021, within the District of Columbia and elsewhere, Erik Herrera attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

*Id.* at 1. Prior to trial, Mr. Herrera filed a Motion to Dismiss, which, among other things, argued Count One of the Indictment should be dismissed for failure to state an offense. *See* ECF No. 38. In this motion, Mr. Herrera argued that Count One of the Indictment failed to state an offense for

---

[1] On March 18, 2024, the Office of the Federal Public Defender spoke by phone with Ms. Erika Placencia of FCI Terminal Island Records Department who confirmed that Mr. Herrera self-surrendered on March 10, 2023.

four reasons, (1) it was against congressional intent and statutory construction, (2) the Electoral Count was not an "official proceeding," (3) the statute is vague on its face and as applied, and (4) relying on *U.S. v. Miller*, 18 U.S.C. § 1512(c)(2) is limited to the conduct like that found within 18 U.S.C. § 1512(c)(1) as connected to an official proceeding.  As related to his fourth argument, Mr. Herrera asserted, in part, the conduct he was charged with in Count One of the Indictment ("entering and remaining in the United States Capitol without authority and threatening Congressional officials") was not conduct that can be said to be in the limited subset of conduct that affects or can affect an official proceeding as outlined in § 1512(c)(1).  *Id.*  Accordingly, Mr. Herrera argued, the government impermissibly charged him with a violation of § 1512(c)(2).  *Id.*

On August 4, 2022, the Court denied in part Mr. Herrera's Motion to Dismiss and deferred ruling on the remainder until the pretrial conference.  ECF No. 55.  At a pretrial conference held on August 5, 2022, the Court denied the remainder of Mr. Herrera's Motion to Dismiss.  8/5/2022 Minute Order (paperless).  The Court rejected each of Mr. Herrera's arguments and determined he was properly charged and the indictment properly stated an offense.  *Id.*

After trial, Mr. Herrera filed a notice of appeal in United States Court of Appeals for the District of Columbia Circuit.  ECF No. 85.  That case was assigned appeal number 23-3009.  As is relevant here, Mr. Herrera's arguments related to Count One of the indictment, including the application and interpretation of 18 U.S.C. § 1512(c), are preserved for appeal and Mr. Herrera plans to raise such arguments.  Mr. Herrera's appeal is being held in abeyance in D.C. Circuit.

///

///

4

## *UNITED STATES V. FISCHER*

In April 2023, the United States Court of Appeals for the District of Columbia Circuit came down with *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). *Fischer* was a consolidated appeal by the government involving a district court's grant of three defendants' motions to dismiss the charges brought against them under § 1512(c)(2). 64 F.3d at 332-34. Like Mr. Herrera, the three defendants in *Fischer* were also January 6 defendants who were charged with violating 18 U.S.C. § 1512(c)(2). *Id.* at 333. All three defendants had been charged under § 1512(c)(2) for engaging in related conduct inside the United States Capitol on January 6. *Id.* at 333-34. In dismissing the charges brought against these defendants under § 1512(c)(2), the district court found that § 1512(c)(2) did not reach the conduct they were charged with under the provision. In so ruling, the district court concluded that the provision must be narrowly read, applying only to conduct related to documents, records, or other objects. *Id.* at 334.

In the *Fischer* appeal, each of the three judges on the panel submitted a separate opinion. The lead judge on the panel concluded that § 1512(c)(2) does in fact reach the conduct the defendants were charged with, finding that the provision "applies to all forms of corrupt obstructive conduct of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)." 64 F.4th at 336. A dissenting judge, concluded the opposite, finding § 1512(c)(2) does not reach the conduct the defendants were charged with and the provision only applies to conduct that, like the specific acts in § 1512(c)(1), impacts evidence. *Id.* at 370 (Katsas, J., dissenting). The third judge found a narrow ground of agreement with the lead judge, finding § 1512(c)(2) can be read to reach the conduct the defendants were charged with. *Id.* at 351 (Walker, J., concurring). However, he held that § 1512(c)(2) could only reach such conduct if the word "corruptly," found at the beginning of § 1512(c), is specifically understood to mean

5

"act[ing] 'with an intent to procure an unlawful benefit either for [one]self or for some other person.'" *Id.* The concurring judge indicated that it is only because he gives "corruptly" this narrow meaning that he finds that § 1512(c)(2) reaches the conduct the defendants were charged with. *Id.* at 362 & n.10. He noted that absent this definition of "corruptly", he would side with the dissent in finding that the language of § 1512(c)(2) only applies to conduct that impacts evidence and that it therefore does not reach the conduct the defendants were charged with. *Id.*

On December 13, 2023, the Supreme Court granted certiorari in the *Fischer* case.

## SENTENCING REVIEW AND ANALYSIS

Sentencing in this case was held on January 13, 2023. Docket Entry 1/12/2023, Case No. 21-cr-00619-BAH. At sentencing the Court found Count one, a violation of 18 U.S.C. § 1512(c)(2) (Count One) and Counts Two and Three, violations of 18 U.S.C. § 1752 grouped pursuant to U.S.S.G. § 3D1.2(c). *See* PSR at 9; Sentencing Transcripts at 61. The Court determined the total offense level for Count One was 27 (base of 14 under U.S.S.G. § 2J1.2 + 8 under U.S.S.G. §2J1.2(b)(1)(B) + 3 under U.S.S.G. § 2J1.2(b)(2) + 2 under U.S.S.G. §3 C1.1). PSR at 10; Sentencing Transcripts at 61.

For Count Two, the Court determined, under U.S.S.G. § 2B2.3, the offense level was 6. Sentencing Transcript at 61. However, finding that Mr. Herrera engaged in the conduct with the intent to commit the felony offense in Count One, the Court bumped up the offense level for Count Two from 6 to 25 (the offense level applicable to Count One under 2J1.2) pursuant to U.S.S.G §§ 2B2.3(c)(1) and 2X1.1(a). *Id.* The Court then added 2 additional points to that offense level under 3C1.1, bringing the total offense level for Count Two to 27 as well. *Id.* at 62.

For Count Three, the Court determined that, under U.S.S.G. §2A2.4, the offense level was 10. *Id.* The Court then added 2 additional points to that offense level under 3C1.1, bringing

6

the total offense level for Count Three to 12. *Id.* Given the above, the Court found that the total offense level for the group consisting of Counts One, Two, and Three was 27. *Id.* at 61-63.

Looking at the above calculations, if 18 U.S.C. § 1512(c)(2) was not applicable to the conduct that Mr. Herrera was charged with, then his total offense level for the group that included Counts One, Two, and Three would be very different.[2] First, Count One would be removed from the grouping analysis. Second, for Count Two, his Guidelines offense level would likely be 6 (with zero-point) but no more than 8 (without zero-point), rather than 27—a base offense level of 4 under U.S.S.G. §2B2.3(a), + 2 under U.S.S.G. § 2B2.3(b)(1)(A), + 2 under U.S.S.G. §3C1.1, - 2 under U.S.S.G. §4C1.1. This results because there would be no basis for using §2J1.2 (the Guideline applicable to 18 U.S.C. § 1512) to determine the offense level for Count Two per the operation of §2B2.3(c)(1) and §2X1.1(a). Count Three would yield a total offense level of 10 (with zero-point) but no more than 12 (without zero-point)—a base offense of 10 under U.S.S.G. §2A2.4(a), + 2 under U.S.S.G. §3C1.1, - 2 under U.S.S.G. §4C1.1. Under grouping rules the highest total offense level is used, here that would be the total offense level associated with Count Three. Mr. Herrera's criminal-history score was zero resulting in Criminal History Category I. *See* PSR at 111. At offense level 10, Mr. Herrera's advisory guideline range is 6-12 months. Sentencing Table, U.S.S.G. Chap. 5, Pt. A. At offense level 12, his advisory guideline range is 10-16 months. *Id.* For Counts Four and Five, because they are petty offense that carry up to six months, the Guidelines are not applicable to them. *See* Sentencing Transcripts at 63.

---

[2] The following analysis includes a calculation with the application of Amendment 821's zero-point offender adjustment found at U.S.S.G. §4C1.1, as well as a calculation the zero-point offender adjustment. Mr. Herrera asserts he is eligible for the zero-point adjustment because he is a zero-point offender and meets the other nine criteria outlined in §4C1.1(a)(2)-(10). However, should the Court disagree, Mr. Herrera provides the relevant calculations without this adjustment.

At sentencing, the Court gave Mr. Herrera a total of 48 months incarceration. ECF No. 83. In doing so, the Court varied downward from the 70-87 month advisory guideline range. Sentencing Transcripts at 95-98. The Court's sentence of 48 months included 48 months on Count One (the lead count of the group consisting of Counts One, Two, and Three), 12 months (the statutory maximum) on both Counts Two and Three, and 6 months (the statutory maximum) on both Counts Four and Five—all the sentences to run concurrently. *Id.* at 98; ECF No. 83. If 18 U.S.C. § 1512(c)(2) did not apply to the conduct that Mr. Herrera had been charged with, the new guideline range would either be 6-12 (with zero-point) or 10-16 (without zero-point).[3]

On March 18, 2024, the Office of the Federal Public Defender spoke by phone with Ms. Erika Placencia of FCI Terminal Island Records Department who confirmed that Mr. Herrera self-surrendered on March 10, 2023. Mr. Herrera has thus been in custody for one year and eight days. During his time in custody Mr. Herrera has completed the RDAP grogram and continues to program in the RDAP unit/yard.

If 18 U.S.C. § 1512(c)(2) did not apply to Mr. Herrera's conduct and he received an in-guidelines sentence for the remaining counts, it is likely he would have completed his term of imprisonment. This is especially true given his completion of the RDAP program, credits assessed for Good time under 18 U.S.C. § 3624(b), and First Step Act earned time credits under 18 U.S.C. § 3632(d)(4). Given all this, if Mr. Herrera was given a new in-guideline sentence he would almost certainly have been deemed to have served it already. Accordingly, if 18 U.S.C.

---

[3] Given this Court's previously imposed sentence, it seems likely the Court would sentence Mr. Herrera within the new guidelines and run the sentences for Counts Four and Five concurrently to that sentence. Though Mr. Herrera understands the Court is only bound by the statutory maximums and not the guidelines or the Court's previous sentence.

8

§ 1512(c)(2) did not apply to the conduct Mr. Herrera was charged with, he has likely already served his sentence.

## **MR. HERRERA SHOULD BE RELEASED PENDING APPEAL**

Pursuant to 18 U.S.C.§ 3143(b) a district court that has sentenced a defendant may order him released from custody while an appeal is pending.  The provision specifically contemplates that the court can do this even after the defendant has noted that appeal.  Indeed, Fed. R. Crim P. 46(c), which states that 18 U.S.C. § 3143 applies for determining release for a defendant pending appeal, recognizes that, in contravention to "the general rule. . . that an appeal to a circuit court deprives the district court of jurisdiction, . . . the district court retains jurisdiction to decide whether the defendant should be detained, even if a notice of appeal has been filed."  Fed. R. Crim. P. 46, Notes, 2002 Amendments; s*ee also United States v Meyers*, 95 F.3d 1475, 1488 n.6 (10th Cir. 1996) ("Although the filing of a notice of appeal usually divests the district court of further jurisdiction, the initial determination of whether a convicted defendant is to be released pending appeal is to be made by the district court.");  Fed. R. App. P. 9, Advisory Committee Notes, Subdivision (b).

18 U.S.C. § 3143(b)(1) requires a court detain a sentenced defendant who has noted an appeal unless the court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in —
>     (i)     reversal
>     (ii)    an order for a new trial
>     (iii)   a sentence that does not include a term of imprisonment, or
>     (iv)   a reduced sentence to a term of imprisonment less that the total of the time already served plus the expected duration of the appeal process

If the court finds that the subparagraphs (A) and (B) above apply, then the court:

> [S]hall order the release of the [defendant] in accordance with section 3142(b) or (c) of this title, except that in the circumstance

9

>described in subparagraph (B)(iv) of this paragraph the [court] shall order the detention terminated at the expiration of the likely reduced sentence.

*Id.*

In *United States v. Perholtz*, 836 F.2d 554 (D.C. Cir 1987), the D.C. Circuit addressed whether three appellants should be released under 18 U.S.C. § 3143(b) while their appeal was pending. On Appeal the appellants were claiming that all of the counts they had been convicted on at trial had to be reversed because of the erroneous application of the mail-fraud statute (18 U.S.C. § 3141). *Id*. at 556. Accordingly, the Circuit indicated that it needed to determine "whether appellants' appeal 'raises a substantial question of law or fact likely to result in reversal.'" *Id*. at 555. In order to make this determination, the Court indicated that it had to assesses whether the appellants raised a substantial question of law or fact that, if decided in their favor, would result in the reversal of their convictions. *Id*. Addressing what constitutes a substantial question of law or fact, the Court expressly held that such a question is "a 'close' question or one that could very well be decided the other way." *Id.* (citing cases).

In *Fischer*, in a three-opinion two-to-one decision, the D.C. Circuit found that 18 U.S.C. § 1512(c)(2) does apply to conduct like that which Mr. Herrera has been charged. However, the concurrence in the decision only agreed with the lead judge's conclusion that 1512(c)(2) does apply to such conduct because it also found that the word "corruptly" at the beginning of 1512(c) has a narrower meaning compensating for an otherwise impermissibly broad application of 1512(c)(2). The concurrence indicated that absent this narrow definition of "corruptly" it would find that 1512(c)(2) does not apply to conduct like that which Mr. Herrera was charged. Given the fact the Supreme Court has now agreed to review the *Fischer* decision, the question of whether 1512(c)(2) applies to the conduct that Mr. Herrera was charged with is now "a 'close' question or one that could very well be decided the other way"—especially given the concurrence's narrow reason for signing on to the majority opinion.

Additionally, given that prior to his self-surrender to BOP, Mr. Herrera was always in full compliance with his conditions of release, that he appeared for every hearing, that he appeared

10

for his trial and sentencing, and that he self-surrendered to BOP as required, it is submitted that there is clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released.

Further, Mr. Herrera has likely served whatever sentence he would be given if 1512(c)(2) did not apply to the conduct charged. Accordingly, if the Supreme Court decides *Fischer* in such a way that the D.C. Circuit will have to vacate Mr. Herrera's conviction under 1512(c)(2) for his appeal, this will likely result in him being given a "reduced sentence... of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B)(iv). Indeed, it may result in Mr. Herrera being given a sentence that is less than the time he has already served.

Finally, granting Mr. Herrera's motion is in line with this Court's decision in a similar case, *United States v. Matthew Bledsoe*, Case No. 21-cr-00204-BAH. The Defendant in *Bledsoe* is similarly situated to Mr. Herrera. Indeed both Mr. Bledsoe and Mr. Herrera were charged and convicted of all five of the same counts and both Mr. Bledsoe and Mr. Herrera received the same sentence. *Compare* ECF No. 260 at 1-5, Case No. 21-cr-00204-BAH with Herrera PSR at 1-2, 15; Herrera Sentencing Transcripts at 61-64. In *Bledsoe*, the Court found by clear and convincing evidence that the defendant is not likely to flee or pose a danger based on facts similar to those of Mr. Herrera, namely his compliance with pretrial release as well his status as a model inmate, and close family support. Mr. Herrera checks each of these boxes and more—where Mr. Bledsoe had issues related to attitude while on pretrial release, ECF No. ECF No. 260 at 6, Case No. 21-cr-00204-BAH, Mr. Herrera had none.

The Court also found that Mr. Bledsoe's appeal raises a substantial question of law--the relevant issue on appeal for Mr. Bledsoe is the same for Mr. Herrera. The Court further found if there is a reversal of Mr. Bledsoe's conviction under section 1512(c)(2) it is likely to result in a reduced sentence to a term imprisonment less than the total of the time already served plus the expected duration of the appeal process as discussed in 18 U.S.C. § 3143(b)(1)(B)(iv). Mr. Herrera's situation is on all fours with this reasoning, as outlined above. Thus, pursuant to

11

this Court's reasoning in *United States v. Matthew Bledsoe*, Case No. 21-cr-00204-BAH, Mr. Herrera should be granted release from custody pending appeal.

For these reasons, Mr. Herrera should be released while his appeal is pending.

## **CONCLUSION**

WHEREFORE, defendant, Erik Herrera, moves this Honorable Court to order that he be released from custody pending appeal.

                                    Respectfully submitted,

                                    CUAUHTEMOC ORTEGA
                                    Federal Public Defender

DATED: March 19, 2024        By  */s/ Jonthan K. Ogata*
                                    JONATHAN K. OGATA
                                    Deputy Federal Public Defender
                                    CA Bar No. 325914
                                    321 East 2nd Street
                                    Los Angeles, CA 90012
                                    Telephone: (213) 894-2854
                                    E-Mail: Jonathan_Ogata@fd.org