UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-619 (BAH) |
| : | |
| ERIK HERRERA, : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION FOR RELEASE PENDING APPEAL

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant Erik Herrera's motion, ECF 91, which seeks release pending appeal in light of the Supreme Court's decision to grant certiorari in *United States v. Fischer*, No. 23-5572, 2023 WL 8605748 (Dec. 13, 2023). Herrera cannot overcome the high barrier for release pending appeal required by 18 U.S.C. § 3143(b). Under the statute, his continued imprisonment is mandatory unless he can establish both (1) by clear and convincing evidence that he does not pose a danger to the community and is not a flight risk, and (2) that the outcome in *Fischer* likely will result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. Herrera cannot do so, so his motion should be denied.

## BACKGROUND

After Defendant Erik Herrera participated in the January 6, 2021, attack on the United States Capitol, a federal grand jury returned an indictment charging him with five counts: Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) and 2 (Count One); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); Disorderly and Disruptive Conduct in a Restricted Building or

Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Five). *See* ECF 8.  Herrera proceeded to a trial, where a jury found him guilty on all counts. ECF 69.

This Court determined Herrera's final offense level was 27 with a criminal history category I, resulting in a guideline range of 70-87 months incarceration.[1]  To avoid an unwarranted sentencing disparity, on January 13, 2023, this Court imposed a sentence of 48 months, which was a below-Guidelines sentence.  *See*  ECF 83 and 84.  The sentence was warranted because Herrera came prepared for violence, with items including a respirator mask, googles, and a bulletproof vest.  Herrera passed an "Area Closed" sign at the Peace Circle, even photographing that sign.  After witnessing attacks on law enforcement officers, tear gas, and the like, Herrera entered the Capitol building through a fire door despite broken glass and alarms blaring.  Once inside, Herrera entered the Parliamentarian's Office, participating in the trashing of that office by throwing a stack of papers into the air.  Herrera posted a picture of himself on social media with the papers before throwing them, with the statement, "I'm reclaiming Aztlan because I love America. Querer es poder![2]" After the police forced Herrera and other rioters out of the Capitol, Herrera reentered the building through another breached fire door, entered a Senator's private office, where he smoked a marijuana joint, and then went into the Crypt, until he was forced out again.  Herrera's

---

[1] The D.C. Circuit issued an opinion on March 1, 2024 in *United States v. Brock*, No. 23-3045, holding that the sentencing enhancement at U.S.S.G. § 2J1.2(b)(2) does not apply to convictions under 18 U.S.C. § 1512(c)(2) for conduct disrupting Congress's counting and certification of the electoral college votes on January 6, 2021.  Herrera does not assert *Brock* applies here.  The United States contends it would not influence this case.  As this Court has noted, it would be appropriate to vary upwards to account for the significant disruption of a critical and important governmental function as a result of defendants' offense conduct if the specific offense characteristic at U.S.S.G. § 2J1.2(b)(2) did not apply. *See United States v. Bender, et al.*, 21-cr-508-BAH, ECF 161 at 3 n.1; *United States v. Williams*, 21-cr-377-BAH, ECF 153 at 6 n.3.

[2] An expression of victory at having obstructed congressional proceedings.

communications before and after January 6, 2021, demonstrated his belief that the 2020 Presidential election was stolen, and his knowledge that the electoral college votes would be certified on January 6.   ECF 84.

Herrera filed a notice of appeal on January 20, 2023.  ECF 85.  On Herrera's motion, the D.C. Circuit ordered Herrera's appeal held in abeyance pending the D.C. Circuit's issuance of the mandate in *United States v. Fischer*, No. 22-3038. *See United States v. Herrera*, No. 23-3009 (D.C. Cir. April 25, 2023).  As such, no opening brief has been filed.

## LEGAL STANDARD

Under 18 U.S.C. § 3143(b), a defendant who has been sentenced to a term of imprisonment "shall . . . be detained" unless the court finds:

1. "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," and

2. that the appeal "is not for the purpose of delay and raises a substantial question of fact or law likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

18 U.S.C. § 3143(b)(1)(A)-(B). The requirements for "reversal" and "an order for a new trial" encompass all counts, not just a single count.  *United States v. Perholtz*, 836 F.2d 554, 557 (D.C. Cir. 1988) (explaining that defendants "cannot be released unless the appeal raises a substantial question likely to result in reversal of *all* counts on which imprisonment is imposed") (emphasis added).  If a judicial officer finds that a defendant is eligible for release because the appeal is "likely" to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," the remedy is not immediate release; rather, "the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence."  18 U.S.C. § 3143(b)(1)(B).  It is the defendant's burden to make the

3

requisite showing under 18 U.S.C. § 3143(b)(1).  *Perholtz*, 836 F.2d at 555-56 (referring to "the required showing on the part of the defendant"); *United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007).

## **ARGUMENT**

Even assuming that the issue being considered by the Supreme Court in *Fischer* raises a "substantial question," Herrera still fails to overcome the high barrier to justify his release from prison.  Congress requires that a person like Herrera, who has been found guilty of an offense and sentenced to a term of imprisonment, must be detained unless he establishes by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released *and* that the appeal is likely to succeed to his material benefit.  He has not done so.

First, Herrera must show by clear and convincing evidence that he is not a flight risk or a danger to the community.  Although Herrera had not committed other crimes prior to this case, and was permitted to remain on pretrial release, *Fischer* does not guarantee Herrera a reduced sentence.  Further, Herrera fails to show by clear and convincing evidence that he is not a danger to the community.  We are now in a presidential election year, and during the last such election cycle, Herrera demonstrated his approval of violence and mob action to challenge the peaceful transfer of power.  As noted, Herrera went to the Capitol on January 6, 2021, with an actual anticipation of violence—he came to Washington, D.C. with a respirator mask, googles, and a bulletproof vest.  His social media posts before January 6 showed he believed the election was stolen, and after January 6 he stated that he "did what he had to do," "It's called a resistance," "It'll be taken back," and "what happened in DC showed everyone it's absolutely possible" (referring to a resistance).  ECF 84.  Although Herrera was on release pretrial and prior to his self-surrender, that fact alone does not mean that Herrera does not present a danger to the community now,

4

particularly given the nature of his convictions and the heated political environment present in the country today.

The United States acknowledges that this Court recently granted motions for release pending appeal for defendants Matthew Bledsoe, Luke Bender, Landon Mitchell, Anthony Williams, and Michael Lee Roche, and in doing so, rejected similar arguments as to flight risk and dangerousness. *See United States v. Bledsoe*, 21-cr-204-BAH, ECF 260; *United States v. Bender, et al*, 21-cr-508-BAH, ECF 161; *United States v. Williams*, 21-cr-377-BAH, ECF 153; *United States v. Roche*, 22-cr-86-BAH, ECF 94. Notwithstanding this Court's decisions in those cases, the United States respectfully submits that Herrera has not met his burden to show that he is neither a flight risk nor dangerous. We nonetheless appreciate and respect the Court's prior rulings.

Separately, release pending appeal is not appropriate because Herrera fails to satisfy the second prong of the test—that his appeal based on the issues raised in *Fischer* is likely to result in reversal, or a sentence without imprisonment or a reduced term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

To start, this Court has already found that *Fischer* raises a "substantial question of law." But the mere fact that the Supreme Court agreed to hear *Fischer* does not indicate that it was wrongly decided. *See, e.g.*, *Heath v. Jones*, 941 F.2d 1126, 1131 (11th Cir. 1991) ("[T]he grant of certiorari does not necessarily indicate that the position advocated by Heath has any merit, only that it is an important question"). Further, Herrera has not established that a reversal in *Fischer* would "likely" result in reversal of Herrera's own § 1512(c)(2) conviction based on the stipulated trial facts. That is, even if the Supreme Court in *Fischer* disagrees with all but one judge of this District and two of the three D.C. Circuit judges, Herrera's conviction under § 1512(c)(2) may stand based on the facts elicited at his trial, specifically his destruction of documents in the Senate

5

Parliamentarian's Office.[3]  As Judge Millet persuasively reasoned in her concurrence to an order denying release in a different case, "even the *Fischer* dissenting opinion's narrow reading of Section 1512(c)(2)'s 'otherwise' clause would seem to reach . . . efforts to prevent Congress from receiving, processing, and considering the evidence of each State's electoral votes." *United States v. Brock*, No. 23-3045 (D.C. Cir. May 25, 2023) (Millet, J., concurring).  Herrera's conduct in participating in the January 6 riot, invading the Senate Parliamentarian's Office, grabbing a stack of papers, and throwing them in the air "necessarily obstructed the handling, submission, processing, and congressional consideration of the evidence of each State's electoral votes. It did so just as much as if [Herrera] had grabbed a pile of state certificates and run away with them." *Id.* at 2-3; *see also United States v. Brock*, 94 F.4th 39, 47 n.4 (D.C. Cir. 2024) (merits panel recognizing that "[t]he evidence of record may also satisfy Bock's evidence-impairment reading of Section 1512(c)(2)").

Further, the Supreme Court's decision in *Fischer* would not result in reversal here on *all* counts. 18 U.S.C. § 3143(b)(1)(B).  Even if his conviction under § 1512(c)(2) conviction was vacated, it would not undermine his convictions on the other five counts, which consist of two 12-month sentences and two six-month sentences, all concurrent. *See Perholtz*, 836 F.2d at 557 (release pending appeal requires a substantial question likely to lead to reversal "of all counts on which imprisonment is imposed").

---

[3] The Parliamentarian of the United States Senate is the official advisor to the United States Senate on the interpretation of Standing Rules of the United States Senate and parliamentary procedure. The Parliamentarian advises the presiding officer, senators and their staffs, committee staffs, and representatives and their staffs on all matters requiring interpretation of the Standing Rules of the Senate, the precedents of the Senate, unanimous consent agreements, and provisions of public law affecting the proceedings of the Senate. The Parliamentarian refers to the appropriate committee all legislation introduced in the Senate, all measures received from the House of Representatives, all official communications from the executive branch, memorials from state and local governments, and petitions from private citizens.

Finally, Herrera also has not shown a likelihood of a sentence without imprisonment or a reduced sentence to a term of imprisonment less than the time already served plus the expected duration of appeal, as required by § 3143(b)(1)(B)(iv). Herrera claims that if his § 1512(c)(2) conviction were to be vacated, then he would most likely fall within a Guidelines range of 6-12 months' incarceration. ECF 91 at 7. Even assuming that his § 1512(c)(2) conviction was entirely invalidated and no Guidelines cross-reference applied, the government disagrees with Herrera's calculation.[4] That is, without the § 1512(c)(2) conviction, Herrera's conviction for violating 18 U.S.C. § 1752(a)(2) (Count Three) would drive the Guidelines. As this Court held at Herrera's sentencing, U.S.S.G. § 2A2.4(a) applies to Count Three, which provides for a base offense level of 10. Sentc'g Hrg. Tr. at 62. With a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 (*id.*), Herrera's offense level would likely be 12, resulting in a Guidelines range of 10 to 16 months. Because the statutory maximum is 12 months, the advisory Guidelines range would become 10 to 12 months. *See* U.S.S.G. § 5G1.1(c)(1)).[5]

---

[4] Even with a reversal of his § 1512(c)(2) conviction, the government may still be able to argue that Herrera's conviction under 18 U.S.C. § 1752(a)(1) cross references to the obstruction guideline, U.S.S.G. § 2J1.2, because, by a preponderance, Herrera acted with the intent to commit another felony. *See* U.S.S.G. 2B2.3(c) (trespass guideline containing cross reference where "the offense was committed with the intent to commit a felony offense").

[5] Herrera contends that his Guidelines range would be lower due to application of U.S.S.G. § 4C1.1, which went into effect after Herrera's sentencing and provides for a two-level decrease in the offense level for individuals who have no criminal history points and who meet certain additional criteria. *See* ECF 91 at 7. However, § 4C1.1 would not apply in this case because—by outfitting himself with a respirator mask, googles, and a bulletproof vest; trashing an office; and using violent rhetoric—Herrera "used credible threats of violence in connection with the offense." U.S.S.G. § 4C1.1(a)(3); *United States v. Bauer*, No. 21-cr-386-2 (TNM), ECF No. 195 at 6 (a credible threat of violence is "a believable expression of an intention to use physical force to inflict harm"). Additionally, due to the unique nature of the January 6 mob, the harms caused by the January 6 riot, and the significant need to deter future mob violence, the government submits that even if the Court finds that § 4C1.1 applies, the Court could vary upwards to counter any reduction in offense level. Such treatment would recognize the unique nature of the criminal events of January 6, 2021, coupled with the overwhelming need to ensure future deterrence, despite a person's limited criminal history.

Notwithstanding the advisory Guidelines range, a reversal of the § 1512(c)(2) conviction could compel the Court to *increase* the aggregate sentence of his misdemeanors, up to a statutory maximum of three years—that is, 12 months for each of Counts Two and Three and 6 months for each of Counts Four and Five, resulting in a total of 36 months. At any resentencing, this Court would be entitled to consider his history and all of Herrera's relevant conduct, including his conduct from the vacated obstruction count. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008). Indeed, at least one judge in this District has held that even without the § 1512(c)(2) conviction, the Court would vary upward to impose the same sentence because the "intent to obstruct the proceeding and the nature of the proceeding itself is so important and so critical in terms of deterrence and all the rest and in terms of the specific fact pattern here that that would be my sentence." *See United States v. Fonticoba*, No. 21-cr-638, Sentc'g Hrg. Tr. at 66-67 (TJK).[6] Herrera's assumption that he would receive a reduced sentence entitling him to release simply because his felony conviction is vacated is not enough to carry his burden under 18 U.S.C. § 3143(b)(1)(B)(iv).

At the same time, the government recognizes that this Court has previously declined to hold that consecutive sentences would be appropriate, based in part on the fact that the government did not explicitly seek such consecutive treatment at the original sentencing. *See, e.g.*, *United States v. Williams*, 21-cr-377-BAH, ECF 153, at 9-10. However, the government's position at the original sentencing does not preclude this Court from considering whether its sentence was influenced by the vacated obstruction conviction, and "reconfigur[ing] the sentencing plan" to "effectuate its sentencing intent." *United States v. Blackson*, 709 F.3d 36, 40 (D.C. Cir. 2013); *see*

---

[6] Similarly, on January 24, 2024, Chief Judge Boasberg explained that even if the defendant's § 1512(c)(2) conviction was overturned, the sentence would be the same because the Court would vary upward on other counts of conviction and impose the sentences consecutively to achieve the same period of imprisonment. *See United States v. Bru*, No. 21-cr-352 (JEB).

8

*also Dean v. United States*, 137 S. Ct. 1170, 1176 (2017) ("[In cases] involv[ing] multicount indictments and a successful attack by a defendant on some but not all of the counts of conviction . . . the Government routinely argues that an appellate court should vacate the entire sentence so that the district court may increase the sentences for any remaining counts up to the limit set by the original aggregate sentence. And appellate courts routinely agree."). Nonetheless, the government understands and respects this Court's prior rulings.

Finally, even if a significantly reduced sentence was likely, the remedy is not to release Herrera now. Instead, § 3143(b) directs the Court to order the defendant released only once he has served the amount of time he is likely to serve upon resentencing. 18 U.S.C. § 3143(b)(1)(B) ("in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated *at the expiration of the likely reduced sentence*" (emphasis added)). Herrera has served barely more than one year incarceration, and to the extent the Court is inclined to grant release, the government requests that the Court order release only at the expiration of the likely reduced sentence.

In sum, Herrera has failed to carry his heavy burden to rebut the presumption of detention at this stage. *See* 18 U.S.C. § 3143(b). His motion for release pending appeal should be denied.

//

//

//

//

//

## CONCLUSION

For these reasons, the United States respectfully requests that the Court deny the Herrera's motion for release pending appeal.

          Respectfully submitted,

          MATTHEW M. GRAVES
          UNITED STATES ATTORNEY
          D.C. Bar Number 481052

By:   */s/ Jacqueline Schesnol*
          JACQUELINE SCHESNOL
          Assistant United States Attorney
          Arizona Bar No. 016742
          United States Attorney's Office
          For the District of Arizona
          40 N. Central Ave, Suite 1800
          Phoenix, Arizona 85004
          jaqueline.schesnol@usdoj.gov