## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No: 21-cr-619 (BAH)** |
| **v.** | : | |
| | : | |
| **ERIK HERRERA,** | : | |
| | : | |
| **Defendant.** | : | |

### UNITED STATES' MEMORANDUM IN SUPPORT OF RESENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum for resentencing in connection with the above-captioned matter.

The defendant, Erik Herrera, a self-proclaimed photojournalist, joined the storming of the Capitol on January 6. For his efforts to disrupt the peaceful transfer of power in the United States and his false trial testimony, this court sentenced Herrera to 48 months' incarceration. As this Court found at the initial sentencing hearing, Herrera's conduct was of the utmost seriousness and the 48-month sentence imposed was sufficient, but not greater than necessary, to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a). Though Herrera's 18 U.S.C. § 1512(c)(2) conviction has since been vacated, Herrera's egregious conduct and false trial testimony has not changed. Moreover, his post-sentencing statements on social media demonstrate his continued pride in his actions on January 6 and that any remorse exhibited at his sentencing was self-serving and intended to deceive this Court.

As explained in more detail below, the Government is aware of this Court's previous statements regarding departures for similarly situated defendants. See *United States v. Stedman*, 21-cr-083-BAH; *United States Bender*, 21-cr-508-BAH. Still, the Government respectfully

1

submits that stacking the sentences imposed for the remaining misdemeanor counts in this case is both permissible and appropriate as the applicable Guidelines do not account for the nature of the underlying conduct. Accordingly, for the reasons below, the United States requests that the Court resentence Herrera to 36 months of incarceration, 12 months of supervised release, $2,000 in restitution, and the mandatory assessment of $70.

## I.    FACTUAL BACKGROUND

### A.  Herrera's Role in the Capitol Attack and Social Media Statements[1]

Herrera's role in the Capitol attack has been well documented. That day, he donned a gas mask, goggles, and a bulletproof vest— some of which he purchased in anticipation of January 6. He approached the building on its west side, where he witnessed other rioters physically battling outnumbered and beleaguered police officers. Herrera eventually moved past the police, climbed through the scaffolding, and scaled the Northwest Steps. At approximately 3:00 p.m., Herrera entered the Capitol through a fire exit door with a shattered windowpane and an alarm blaring overhead. Once inside, Herrera immediately entered the Senate Parliamentarian's Office, which other rioters had ransacked. Herrera further contributed to the ruin of that office by picking up a stack of papers and throwing them in the air. Seemingly proud of his participation, Herrera captured the moment in an Instagram photo that he posted online. Alongside the photo was a caption that stated: "I'm reclaiming Aztlan because I love America. Querer es poder!"[2] In another

---

[1] For a full recounting of his conduct, the government refers the Court to its 2022 Sentencing Memo. *See* ECF No. 75 at 7–20.

[2] Testimony at trial revealed that the term "Aztlan" can refer to lands purportedly stolen from Mexico by the United States, and that the term "querer es poder" can be roughly translated into English as "Where there's a will, there's a way" or "If you can dream it, you can achieve it."

statement on Instagram, Herrera claimed that he picked up the papers in the Senate Parliamentarian's Office because he wanted to take a "fuck you" picture.

Several minutes after entering, Herrera left the Senate Parliamentarian's Office, swiping a bottle of alcohol on his way out. He only exited the building when throngs of police forced the rioters out via the fire door. Instead of leaving the grounds, Herrera re-entered the Capitol a second time at the nearby Senate Wing Door, which is also an emergency exit only door. As was the case during his first entry, he entered the building amid obvious signs that entry was not permitted— namely, a blaring alarm and broken windows on either side of the door. Ignoring those signs, Herrera took photos and proceeded to the nearby office of a United States Senator. Inside that office, Herrera smoked marijuana with fellow rioters while posing for photos and videos. He then left the Senator's office and proceeded to the Crypt, where he took additional photos. At approximately 3:30 p.m., Herrera was forced out of the building by police, having spent a total of about 35 minutes inside.

In the days after January 6, Herrera made several other incriminating statements on social media. For example, Herrera stated that "he did what he had to do for both photojournalism and our people." He also said, with regard to his actions in the Senate Parliamentarian's Office, "all I did was throw some paper in the air, LOL."

**B.   Herrera's False Trial Testimony**

At trial, Herrera made numerous false statements that earned him a two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1. Specifically, Herrera claimed that his only purpose for entering the Capitol on January 6 was to take pictures, and further claimed that he did not intend to participate in a riot or stop the official proceeding of Congress. Aug. 18 Trial Tr. at

20–24. He also falsely asserted that after the riot, he immediately saw his actions as a mistake and regretted them. Aug 17. Trial Tr. at 262.

### C.  Herrera's Post-Sentencing Statements

At the initial sentencing hearing, Herrera addressed the Court and stated that he was "deeply remorseful and ashamed of what [he] did at the United States Capitol on that day." Sent. Tr. at 84. The Court took Herrera's statements of remorse into account when devising an appropriate sentence for Herrera. *See id.* at 92. But since that hearing, and after Herrera was released from prison pending appeal, he has posted incessantly on X[3] about the events of January 6, 2021. In those posts, Herrera has portrayed himself as a victim of political grievance, referred to court cases as "persecution" not prosecution, suggested that the riot at the Capitol was the result of a "fedsurrection,"[4] invited others to put pressure on judges who are sentencing January 6 defendants, and intimated that his conduct has been vindicated by the 2024 presidential election results.

For example, on October 7, 2024, Herrera posted that "an apology [for the January 6 prosecutions] is not going to cut it." And, immediately after the election, Herrera, in a series of posts and reposts, stated that he was still "upset and angry" about what happened to him as a result of his conduct on January 6, that he has not "forgotten" about it, that he "will not budge."

---

[3] X is formerly known as Twitter.
[4] The use of this term is a reference to the debunked and baseless conspiracy theory that the riot on January 6 was the result of federal government provocation.



The next day, Herrera posted that "the left" was responsible for January 6 "protestors" being "unjustly arrested," and once again stated that "an apology isn't going to cut it."



On November 18, 2024, Herrera posted on X that "MANY Americans were politically persecuted" for their conduct on January 6, and that he was "bothered" that more people did not

support these defendants. He also included a hashtag on this (and many other posts) indicating his belief that January 6, 2021 was a "#fedsurrection" and that Americans were "persecuted." He also noted that lengthy prison sentences, presumably including his own, were an "injustice." A screenshot of this social media post is included below:



On the same day, Herrera clarified his disapproval for people who did not support him and other January 6 defendants:



On December 10, 2024, Herrera posted a video to his account on X of rioters inside a Senate office on January 6, 2021, and suggested the rioters were simply "meandering around" that day. He also included the same "#fedsurrection" hashtag:



On December 10, 2024, Herrera re-posted an invective from another X user about the need to "keep up pressure" on "heartless" federal judges who were overseeing January 6 cases:



One December 20, 2024, Herrera posted a photo of himself wearing a shirt that read "J6 Prisoner" demonstrating a lack of remorse:



On December 21, 2024, Herrera posted photos of himself with other January 6 defendants, including Adam Christian Johnson (who calls himself "The Lectern Guy" because he was the person that stole Speaker Nancy Pelosi's lectern) and Jacob Chansley (known colloquially as the "QAnon Shaman"):



On January 6, 2025—the fourth anniversary of the attack on the Capitol—Herrera posted

no less than a dozen times on X, repeatedly referring to January 6 as a #Fedsurrection:



As recently as January 8, 2025, Herrera reposted a tweet referring to an individual convicted and incarcerated for her crimes on January 6 as a "hostage" held in the "D.C. gulag":



## II.    PROCEDURAL HISTORY

### A.  Conviction and Original Sentence

On August 19, 2022, after a one-week trial, a jury convicted Herrera of all five counts of which he was charged: Count One, Obstruction of an Official Proceeding, 18 U.S.C. §§ 1512(c)(2) and 2; Count Two, Entering and Remaining in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(1); Count Three, Disorderly and Disruptive Conduct in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(2); Count Four, Disorderly Conduct in a Capitol Building, 40 U.S.C. § 5104(e)(2)(D); and Count Five, Parading, Demonstrating, or Picketing in a Capitol Building, 40 U.S.C. § 5104(e)(2)(G). ECF No. 69.

During Herrera's initial sentencing on January 13, 2023, the then-applicable United States Sentencing Guidelines (U.S.S.G. or "Guidelines") took into account not only the seriousness of his felony and misdemeanor convictions, but also the totality of his conduct and the relevant surrounding circumstances as described above. With Count One driving the calculations, the Court

calculated Herrera's total estimated offense level to be 27. With a criminal history category of I, his Guidelines range was 70–87 months' incarceration. Sent. Tr. at 63.

During the hearing, the Court found that Herrera had provided "materially false testimony during his trial when he testified." *Id.* at 23. Among the material misrepresentations noted, the Court stated that the defendant's "self-serving testimony that he did not have any ulterior motive – purpose in joining the riot" was "incredible." *Id.* at 27.

The Government recommended a within-Guidelines sentence of 78 months' incarceration. The Court instead varied downward to a sentence of 48 months' incarceration to address the disparity in sentencing severity arising from the accumulation in offense levels for specific offense characteristics under U.S.S.G. § 2J1.2(b)(1)(B) and (b)(2), citing a case with a similarly situated defendant, *United States v. Bledsoe*, 21-cr-204 (BAH).[5]

### B. Herrera's Appeal

On appeal, Herrera challenged his conviction under 18 U.S.C. § 1512(c)(2) and his sentence. *See* ECF No. 85. On April 17, 2024, while the *Fischer* decision and Herrera's appeal were pending, this Court granted Herrera's motion to be released. Herrera was subsequently released, having served approximately 13 months' incarceration. *See* ECF No. 99.

On June 28, 2024, while Herrera's appeal was pending, the Supreme Court issued its opinion in *Fischer v. United States*, 603 U.S. 480 (2024). On November 20, 2024, Herrera's conviction under 18 U.S.C. § 1512(c)(2) was vacated by the Court of Appeals for the District of Columbia and this case was remanded to this Court for further proceedings. ECF No. 106, 107. This Court ordered the parties to brief their positions on the nature and extent of further

---

[5] *Bledsoe* is set for resentencing on February 14, 2025.

proceedings permissible under the Court of Appeals' remand. 12/5/24 Minute Order. The Court then granted the government's request for a resentencing hearing.

## III.    REVISED GUIDELINES ANALYSIS

### A. Analysis

The government provides the following amended sentencing calculations for the remaining counts to which the Guidelines apply: Counts Two and Three.[6]

**Count Two: 18 U.S.C. § 1752(a)(1) - Entering and Remaining in a Restricted Building or Grounds**

| Base Offense Level | 4 | U.S.S.G. §2B2.3(a) |
|---|---|---|
| Specific Offense Characteristic | +2 | U.S.S.G. §2B2.3(b)(1)(A)(vii): the trespass occurred "at any restricted building or grounds." |
| Adjustment | +2 | U.S.S.G. § 3C1.1: "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense" |
| **Total** | **8** | |

**Count Three: 18 U.S.C. § 1752(a)(2) - Disorderly and Disruptive Conduct in a Restricted Building or Grounds**

| Base Offense Level | 10 | U.S.S.G. §2A2.4(a) |
|---|---|---|
| Adjustment | +2 | U.S.S.G. §3C1.1: "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense" |
| **Total** | **12** | |

---

[6] Counts Four and Five are Class B misdemeanors to which the Sentencing Guidelines do not apply. *See* 40 U.S.C. § 5109(b); 18 U.S.C. § 3559(a)(7); U.S.S.G. § 1B1.9.

Counts Two and Three group because both involve the same victim: Congress. U.S.S.G. § 3D1.2(d). The offense level for that Group is the level "for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the Group." U.S.S.G. § 3D1.3(a). Since Count Three has the highest offense level for the counts in the group, the offense level for the group is 12. And because there is only one group, the total adjusted offense level is the level for that group: 12.

### B.  Zero-Point Offender Adjustment

Since Herrera's initial sentencing, U.S.S.G. § 4C1.1, which provides for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria, has gone into effect. Nevertheless, U.S.S.G. § 4C1.1 does not apply in this case because Herrera's conduct threatened physical injury to law enforcement officers in the building by joining the crowds and overrunning officers inside the Capitol.

### C.  Criminal History and Guidelines Range

The U.S. Probation Office calculated Herrera's criminal history as category I, which is not disputed. Accordingly, Herrera's post-*Fischer* Guidelines range is 10 to 16 months' imprisonment. But the sentence imposed on any individual count is restricted to the statutory maximum for that count, which is 12 months for Counts Two and Three and 6 months for Counts Four and Five.

## IV.    THE SERIOUSNESS OF THE CRIMES[7]

The Government recommends that the Court impose a sentence of 36 months' incarceration for Herrera's four remaining convictions. To impose the requested sentence, the

---

[7] For a full recounting of the government's analysis of the 18 U.S.C. § 3553(a) factors, the government refers the Court to its 2022 Sentencing Memo. See ECF No. 75 at 35–45.

Court would need to depart or vary upward from the Guidelines range and will have to impose consecutive sentences on at least some of the counts of conviction. As explained below, this Court should do both of those things to impose a fair and just sentence that reflects all the § 3553(a) sentencing factors. Such a sentence would exceed both the Guidelines range and the statutory maximum sentence for any one of the individual counts of conviction alone, but is justified, appropriate, and legal.

The Government, however, is cognizant of this Court's previous statements in *Stedman* and *Bender* regarding imposing consecutive sentences in this context. While the government respects the Court's perspective, it stands by its recommendations in those cases and believe its recommendation here—36 months' incarceration—is equally warranted. That is because nothing about this defendant and his conduct that initially earned him a 48-month sentence has changed since January 2023. To the contrary, the Court only has *more* evidence today of Herrera's lack of remorse and pride in his actions. Regardless of whether the government sought additional charges – including felonious conduct – (a process that would expend resources, but not alter the factual calculus), the Government's request is more than justified, particularly given that, as explained in further detail below, the Guidelines in this case do not meaningfully address crimes committed in the context of January 6. Indeed, the government's request fulfills – rather than contradicts – the spirit of the guidelines and §3553(a): the defendant's conduct, acceptance, remorse, violence, and character have been properly evaluated, and the law has been evenly applied.

### A. An Upward Departure or Variance is Warranted

After determining the defendant's Guidelines range, a court then considers any departures or variances. *See* U.S.S.G. § 1B1.1(a)-(c). Because Herrera's Guidelines range does not capture the unprecedented and uniquely harmful nature of his crimes, which struck at the heart of our

democracy and the rule of law, the Government respectfully requests that the Court depart or vary upwards from the top of the Guidelines range to 36 months' incarceration.

Herrera was not some disinterested photojournalist on January 6. He was a willing participant in an unprecedented crime. He joined a mob that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses. His offenses targeted the peaceful transfer of power, an essential government function, and one of the foundational principles of our democracy. Like every member of the mob, Herrera "endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *United States v. Brock*, 94 F.4th 39, 59 (D.C. Cir. 2024). As Judge McFadden put it to another rioter, "[Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources." *United States v. Hale-Cusanelli*, 21-cr-37-TNM, Sent'g Tr. 9/22/22 at 86-87.

But nothing in Herrera's current Guidelines calculation reflects these facts. Herrera would face the same offense level if his crimes had not endangered the democratic process or interfered with the peaceful transfer of power.[8] There is no specific offense characteristic in the Guidelines

---

[8] The D.C. Circuit's holding in *Brock*, 94 F.4th 39, finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot when drafting the Guidelines. And the Supreme Court's decision in *Fischer v. United States*, 144 S. Ct. 2176, 2195 (2024) demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, slip op. at 29 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

for attacking democracy or abandoning the rule of law. "And simply saying, yeah, I know I trespassed, I trespassed, that's not really capturing the impact of what that day meant when all of those members of Congress met there to fulfill their constitutional duty." *United States v. Calhoun*, 21-CR-116-DLF, Sent. Tr. at 85. A sentence within Herrera's Guidelines range here would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

The Guidelines expressly state that an upward departure is warranted where a case presents a circumstance that "may not have been adequately taken into consideration in determining the applicable guideline range" or that "the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence." U.S.S.G. § 5K2.0(a)(2). The Guidelines also provide that a departure is warranted when an offense results in "a significant disruption of a governmental function" and the Guidelines do not reflect the appropriate punishment for the offense. U.S.S.G. § 5K2.7.[9] In such circumstances, "the court may increase the sentence above the authorized guideline range to [1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected." *Id.*

It is not hyperbole to call what happened on January 6 a crime of historic magnitude. As judges of this district have repeatedly and clearly stated, January 6 was an unprecedented disruption of the nation's most sacred function—conducting the peaceful transfer of power. "The events that occurred at the Capitol on January 6th will be in the history books that our children read, our children's children read, and their children's children read. It's part of the history of this

---

[9] This guideline does not require the government to establish a direct link between the defendant's misconduct and the alleged disruption, nor does it "require that the disruption be of any particular type or consequence." *See United States v. Saani*, 650 F.3d 761, 765–66, 771 (D.C. Cir. 2011).

nation, and it's a stain on the history of this nation." *United States v. Miller*, 21-CR-75-RDM, Sent. Tr., at 67.

But just as the history books will describe the crimes of January 6, so will they tell the story of how this nation responded. Future generations will rightly ask what this generation did to prevent another such attack from occurring. The damage done to this country on January 6 must be reflected in the sentences imposed on those who caused the damage—it must not be treated as just another crime. "January 6th wasn't an ordinary violent riot but one that interfered with the counting of electoral votes and the peaceful transition of power, which is one of the bedrocks of our democracy." *United States v. Perkins*, 21-CR-147-CJN, Sent. Tr. at 53; *see also United States v. Fitzsimons*, 21-CR-158-RC, Sent. Tr., at 85-86. ("The security breach forced lawmakers to hide inside the House gallery until they could be evacuated to undisclosed locations. In short, the rioters' actions threatened the peaceful transfer of power, a direct attack on our nation's democracy.").

Indeed, even before *Fischer*, judges of this Court gave significant upward departures and/or variances in January 6 cases when they found the advisory guideline range inadequate. *See, e.g.*, *United States v. Hale-Cusanelli*, 21-CR-37-TNM, 9/22/22 Sent. Tr.; *United States v. Christian Secor*, 21-CR-157-TNM, 10/19/22 Sent. Tr.; *United States v. Hunter and Kevin Seefried*, 21-CR-287-TNM. 10/24/22 Sent. Tr.; *United States v. William Watson*, 21-CR-513-RBW, 3/9/23 Sent. Tr.; *United States v. Riley Williams*, 21-CR-618-ABJ, 3/23/23 Sent. Tr.; *United States v. Hatchet Speed*, 22-CR-244-TNM, 5/8/23 Sent. Tr.

And several judges of this Court have upwardly departed in January 6 cases precisely because the advisory guideline range did not adequately take into account all of the relevant circumstances. See *United States v. Eicher*, 22-cr-38-BAH, Sent. Tr. 9/15/23 at 50 (applying

§ 5K2.7 because the defendant "join[ed] a mob, in the center of the melee, and through the sheer numbers and aggressive conduct towards police, breached the Capitol resulting in stopping the legitimate business of Congress for hours"); *United States v. Black*, 21-CR-127-ABJ, Sent. Tr. 5/16/23 at 27 (applying an upward departure pursuant to § 5K2.7 for a January 6 rioter).

In *United States v. Oliveras*, 21-CR-738-BAH, this Court sentenced a defendant on a § 231(a)(3) conviction, a § 111(a)(1) conviction, and four misdemeanors, after his § 1512(c)(2) conviction was dismissed in light of *Fischer*. This Court found an upward departure was warranted under U.S.S.G. § 5K2.7 (Disruption of Governmental Function) because after *Fischer*, with the dismissal of [the defendant's] 1512(c)(2) conviction, none of the conduct that goes into determining defendant's sentencing guidelines reflect his intent to engage in political violence that poses such a threat to our American democracy… His intent to obstruct Congress in the Electoral College certification by violence, if necessary, go above and beyond what any of his current convictions now take into account. *Oliveras*, 21-cr-738-BAH, Sent. Tr. at p. 49. This court noted that "[i]n assessing the extent of the departure, review of how the guidelines for obstruction of an official proceeding at [U.S.S.G. §] 2J1.2 would have applied to defendant [pre-Brock] provide a general guide… [and] an upward departure within that range is appropriate." *Id*. at 49-50. The court also noted that it "would impose the same sentence with . . . an upward variance for the same reasons that are outlined in § 5K2.7 and consideration of the 3553(a) factors." *Id.* at 97. From an advisory Guidelines range of 37-46 months' imprisonment, this Court sentenced Oliveras to 60 months of imprisonment.[10]

---

[10] Other Courts in this district have also applied significant upward departures in post-*Fischer* sentencings. *See United States v. Sparks*, 21-CR-87-TJK; *United States v. Robertson*, 21-CR-34-CRC; *United States v. Dunfee*, 23-CR-36-RBW.

Because the seriousness of Herrera's crime is not adequately captured by the applicable Guideline, an upward departure is appropriate here as well. However, if the Court declines to depart, an upward variance to 36 months' incarceration is still warranted. An upward variance is appropriate when "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018). While the Supreme Court's decision in *Fischer* has changed Herrera's advisory Guideline range, it does not require this Court to take a drastically different view of his conduct. *Hostetter*, 21-CR-392-RCL, ECF No. 507, at 4-5. Indeed, "*Fischer* does not mean that I cannot consider at sentencing evidence that establishes that the defendant intended to obstruct Congress' certification of the electoral vote in determining whether . . . the resulting guideline range fully accounts for the criminal conduct." *See United States v. Sparks*, 21-CR-87-TJK, Sentencing Tr. at 95. *See also United States v. Kelly*, 21-CR-708-RCL, ECF No. 151, Sent. Tr. at 5 ("Nothing about *Fischer* or any hypothetical outcome of [defendant's] appeal bears directly on the severity of his conduct on January 6th . . . . Likewise, the outcome in *Fischer* would not dictate the Court's application of the sentencing factors prescribed in 18 U.S.C. § 3553(a)"); *United States v. Jensen*, 21-CR-6-TJK, Sent. Tr. at 16 ("given the importance and the significance of the proceeding of certifying the Electoral College votes, I would vary upward -- even if this [sentencing enhancement] didn't apply, I would vary upward when considering the nature of the offense.")

In past sentencings, this court has made clear its view that the riot "was a chilling first in our history, that the peaceful transition of power, after a democrat election, was totally disrupted. And this is not a garden-variety episode of unlawful entry, disorderly conduct, merely being unlawfully present or trespassing in a sensitive place like the Capitol when every member of

20

Congress is there for a Joint Session and the Vice President is there. This was a dangerous first where the peaceful transition to a new presidential administration was disrupted." *United States v. Todd III*, 22-CR-166-BAH, Trial Tr. at 92. Those were not merely empty words—they were a recognition of the seriousness and unprecedented nature of the riot.

Also unprecedented is the need for January 6 sentences to promote respect for the law and deter future crime. *See* 18 U.S.C. § 3553(a)(2)(A), (B). The January 6 rioters went far beyond merely breaking the law. "There is a difference between breaking the law and rejecting the rule of law." *See* Opening Remarks, January 6 Select Committee (Rep. Kinzinger).

In addition to departing upwards, other courts have varied upward from the advisory guideline range specifically because of the unique and serious nature of the crimes committed that day; this Court should do no less. *See Reffitt*, 2024 WL 1577941, at *5 (upward variance would be justified because "as other judges in this district have noted, the proceedings at issue on January 6, 2021 were of much greater significance than run-of-the-mill 'judicial, quasi-judicial, and adjunct investigative proceedings'"); *United States v. Fonticoba*, 21-CR-368-TJK, Sent'g Tr. 1/11/24 at 66–67 (stating that, even if the defendant's § 1512 conviction were invalidated, a significant upward variance was warranted to account for the defendant's intent "to obstruct the proceeding and the nature of the proceeding itself"); *United States v. Secor*, 21-CR-157-TNM, Sent. Tr. 10/19/22 at 53 ("I believe both the seriousness of the event — you obstructed the certification of an official proceeding — and your particular role in it . . . require a significant upward variance"); *Hale-Cusanelli*, 21-CR-37-TNM, Sent. Tr. 9/22/22 at 87 ("I also believe the extensive damage and injuries caused on January 6th with your fellow rioters require additional punishment beyond what my [guideline] calculation allows.").

In this case, the government submits that an upward variance and/or departure of 20 months

21

from the high end of the Guidelines range, resulting in the requested 36-month sentence, is warranted to reach an appropriate sentence. Pursuant to USSG § 5G1.2(d), where the sentence to be imposed exceeds the statutory maximum of any one count, then the remainder of the sentence shall run consecutively, to the extent needed to produce a combined sentence equal to the total punishment.

As stated earlier, the government appreciates and respects the Court's prior concern over stacking sentences in the misdemeanor context. But not doing so creates itself a disparity – not every defendant in the post-*Fischer* context is created the same. Thus, imposing a 12-month sentence reflexively, simply because of the felony-misdemeanor status of a crime, unintentionally devalues the conduct, remorse, acceptance, and overall individual character of a defendant. Here, Herrera is, respectfully, not Patrick Stedman or Luke Bender. Neither Stedman or Bender trashed the Senate Parliamentarian's Office, smoked marijuana in the Capitol, or stole a bottle of alcohol during the riot. Moreover, Bender was convicted after a stipulated trial, Herrera took his case to a jury and lied under oath when he took the stand. Although Stedman also went to trial, lied under oath, and failed to show remorse after his initial sentencing, Stedman's post-conviction statements indicate that he continued to spread disinformation about the results of the 2020 presidential election. As detailed above, Herrera's post sentencing statements have called into question the legitimacy of the justice system that sent him to prison in the first place.

## V.    CONCLUSION

For the reasons set forth above, and as fully supported by the facts and the law, the United States asks the Court to resentence Herrera to a sentence of 36 months' incarceration—with the sentence for each count to be ordered to be served consecutively to the extent needed to produce a combined sentence equal to the total punishment. *See* U.S.S.G. § 5G1.2(d). The United States

further asks the Court to impose a 12-month term of supervised release, restitution of $2,000, and the mandatory special assessment of $70.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:     /s/*Christopher Cook*
Christopher Cook
Trial Attorney
950 Pennsylvania Ave. N.W.,
Washington, D.C. 20530
(202) 616-2925
Christopher.cook7@usdoj.gov

*/s/ Jacqueline Schesnol*
JACQUELINE SCHESNOL
Assistant United States Attorney
40 N. Central Ave, Suite 1800
Phoenix, Arizona 85004
(602) 514-7500
jacqueline.schesnol@usdoj.gov

23